Filed 1/13/22  P. v. Baumgartner CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN MICHAEL BAUMGARTNER,<br><br>    Defendant and Appellant. | D077924<br><br><br><br>(Super. Ct. No. FSB 1403133) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Harold T. Wilson, Jr., Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kelley A. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

# INTRODUCTION

A jury found Steven Michael Baumgartner guilty of second degree murder (Pen. Code, § 187, subd. (a)),[1] and found true allegations that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally used a firearm (§ 12022.53, subd. (b)).  The trial court sentenced Baumgartner to 40 years to life in prison, which included 15 years to life for the murder conviction and 25 years to life for the section 12022.53, subdivision (d) firearm enhancement.  The court stayed execution of the remaining firearm enhancements.

In Baumgartner's initial appeal, we affirmed the underlying convictions.  While Baumgartner's appeal was pending, the Legislature amended section 12022.53, subdivision (h) to permit trial courts to strike or dismiss section 12022.53 firearm enhancements pursuant to section 1385 in the interest of justice.  We accepted the People's concession that the change in the law applied retroactively to Baumgartner's case.  Accordingly, we vacated Baumgartner's sentence and remanded the matter for resentencing to permit the trial court to exercise its discretion to determine whether to strike the firearm enhancements in light of the change in the law.  (*People v. Baumgartner* (Jul. 11, 2019, D075102) [nonpub. opn.].)[2]

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2]    While this appeal was pending, we granted the People's unopposed request that we take judicial notice of our opinion in Baumgartner's prior appeal.

On remand, the trial court declined to "exercise its discretion to strike" the firearm enhancements, stating that the "sentence previously imposed will remain as set."

In this appeal, Baumgartner contends that a second remand for resentencing is required for two reasons. First, Baumgartner maintains that in resentencing him, the trial court erred in failing to exercise its discretion to consider whether the interests of justice would be served by striking the 25 years to life section 12022.53, subdivision (d) firearm enhancement and imposing and executing instead one of the lesser firearm enhancements on which the jury had returned true findings (i.e., § 12022.53, subd. (b) ["a person who, in the commission of a [murder], personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for *10 years*" (italics added)]; *id.*, subd. (c) ["a person who, in the commission of a [murder], personally and intentionally discharges a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for *20 years*" (italics added)]). Second, Baumgartner contends that in resentencing him, the court failed to adequately consider various mitigating factors and improperly considered certain aggravating factors. We affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

A. *The People's evidence*

Victim Michael Clark lived next door to Baumgartner with his wife, his thirteen-year-old stepdaughter, C.C., and his best friend, Jeremy Jutras, among others.

---

[3]    Our factual and procedural background is taken from *People v. Baumgartner, supra*, D075102.

A few nights before the murder, Clark and his wife got into an argument at their residence. Baumgartner called the police about the Clarks' altercation and left his residence in his car immediately thereafter.

A few days later, at approximately 5:00 p.m., Clark and Baumgartner each arrived at their respective residences at around the same time. Clark angrily asked Baumgartner why he had called the police the other evening. Clark and Baumgartner were both yelling. C.C. heard Clark call Baumgartner a "pussy" and a "bitch." Jutras heard Clark and Baumgartner shouting at each other.

During the argument, Baumgartner went inside his house. Approximately 10 or 15 seconds later, Baumgartner emerged from his house holding a gun. Baumgartner approached Clark, pointed the gun in Clark's face and asked, "Who is a bitch now?" Clark was standing on his property and Baumgartner was standing on his. According to C.C., the gun was approximately one foot from Clark's face.

Clark responded, "Go ahead and shoot me. I'm not on your property. I'm not afraid." Baumgartner shot Clark in the face, killing him. C.C. and Jutras testified that Clark was unarmed and that he was not holding anything in his hands at the time Baumgartner shot him.

Jutras immediately called 911. Police arrived shortly thereafter and arrested Baumgartner.

Detectives Edward De La Torre and Matthew Peterson interviewed Baumgartner. During the interview, Baumgartner claimed that the incident had started when Clark began insulting him and angrily asking Baumgartner why Baumgartner had called the police on Clark. Baumgartner said that Clark threatened to "kick [his] ass," and "destroy [his]

4

car." According to Baumgartner, Clark then picked up a rock and Baumgartner went inside his house and got a gun.

Detective De La Torre asked, "And, why did you come back out?" Baumgartner responded, "Because I thought my, my car, he was gonna break the car with a, with a rock or, or he's gonna hit me with the rock." Baumgartner claimed that when he returned with a gun, Clark told him, "I'm gonna cave your head in with this rock," and advanced toward Baumgartner. Baumgartner said that he shot Clark because he feared that Clark would injure him with the rock.

B. *The defense*

Baumgartner testified that when he arrived home on the day of the shooting, Clark told him, "I'm going to break your car." Clark called Baumgartner a "bitch ass snitch" and asked Baumgartner why he had called the sheriff. According to Baumgartner, Clark then picked up a rock and said, "I'm going to bash your head in. I'm going to kill your dogs and I'm going to bash your wife's head in." Baumgartner ran inside his house and retrieved a gun because Clark was chasing after him.

As soon as he retrieved the gun, Baumgartner started to run back outside the house. One of Baumgartner's dogs ran outside the house. Baumgartner chased after the dog and eventually was able to catch up with the dog and grab her.

According to Baumgartner, as he was grabbing his dog, Clark said, "Oh, you brought a gun out here." Baumgartner claimed that Clark began threatening him again while making lunging motions and raised his arm while holding a rock. After the third time that Clark raised his arm, Baumgartner "cocked the weapon and it instantly went off." Baumgartner added that he cocked the gun because, "I felt that I was in immediate

danger." Baumgartner explained that he feared that Clark would hit him with the rock or throw the rock at him.

## III.

## DISCUSSION

### A. *The trial court did not err in resentencing Baumgartner*

Baumgartner contends that the trial court erred in resentencing him, for two reasons. First, Baumgartner argues that the trial court erred in failing to consider whether the interests of justice would be served by striking the 25 years to life section 12022.53, subdivision (d) firearm enhancement and imposing and executing instead one of the lesser firearm enhancements as to which the jury had returned true findings (§ 12022.53, subds. (b), (c)). Baumgartner also maintains that the trial court erred in failing to adequately consider certain mitigating factors and improperly considering certain aggravating factors. We provide the factual and procedural background, governing law, and standard of review relevant to both arguments, then consider each argument in turn.

### 1. *Factual and procedural background*

#### a. *This court's disposition in Baumgartner's prior appeal*

Our disposition in Baumgartner's prior appeal stated as follows:

> "Baumgartner's sentence is vacated and the matter is remanded for resentencing. At resentencing, the trial court shall exercise its discretion in determining whether to strike one or more of the section 12022.53 firearm enhancements under section 1385 or again impose the enhancement terms. In all other respects, the judgment is affirmed." (*People v. Baumgartner, supra*, D075102.)

#### b. *Baumgartner's motion to strike the firearm enhancements*

On remand, Baumgartner filed a motion to strike the firearm enhancements and a supporting brief. In his brief, Baumgartner noted that

6

the jury had found true allegations that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally used a firearm (§ 12022.53, subd. (b)). Baumgartner also outlined the Legislature's amendment of section 12022.53, subdivision (h) to authorize a trial court to strike firearm enhancements in the interest of justice pursuant to section 1385.

Baumgartner argued that in determining whether to strike the enhancements, the trial court was required to "consider the specifics of [his] individual case, including [his] background and the nature of his present offense . . . ." In arguing that a consideration of these factors warranted striking the enhancements, Baumgartner argued in relevant part:

> "Here, the shooting was precipitated by a [heated] confrontation. There was no planning premeditation. Baumgartner had no criminal history and [is] not likely to reoffend in the future. Significantly for this analysis, the nature of the offense is not an accurate indicator of future dangerousness. [Citation.] Future dangerous [*sic*] should be a critical factor here . . . . [¶] . . . [¶] At the time of the offense, Baumgartner was over 50 years old. His current sentence of 40 years to life, is one which likely will leave him unable to live long enough to meet a parole board. Reducing that sentence by a term of 25 years to life would leave substantial punishment for this offense and also render Baumgartner sufficiently aged at the time of potential parole that he would not be active in a gang, the two factors of apparent concern to the court."

Baumgartner concluded by requesting that the trial court "exercise its discretion and strike the arming enhancements pursuant to amended section 12022.53, subdivision (h)."

7

In support of his motion, Baumgartner lodged several letters from family members and friends. In addition, Baumgartner submitted a letter on his own behalf. In his letter, Baumgartner stated in part:

> "I am a good decent person who made a bad mistake out of 'Fear,' not 'Anger,' in [reference] to Michael Clark, my Neighbor in Crestline. I am very sorry to his family for his loss. I never intended for this to happen. I just wanted the 'Bully' to feel [afraid] as much as I was of him. He was 15 years younger than me and in really good physical shape. I was 53 and [weighed] about 270 [l]bs. Taking high blood pressure pills, [d]iabetic medicines, and a slew of others including 'Testosterone replacement Therapy.' I realize that the 'Testosterone Treatment' was changing my mood and making me feel different than normal. I am not offering excuses for my actions but rather trying to 'clear the air' once and for all on this matter."

Baumgartner also maintained that the shooting had been accidental, stating:

> "I am responsible for a 'Gun mis-fortune' or 'Mishap.' In cocking the firearm, the hammer never locked back, and it fell forward, firing the weapon. I never had any intention of actually firing the weapon recklessly at Mr. Clark. I'm 'Guilty' of a Manslaughter, but not of a 2nd[ ] Degree Murder. I'm telling you this with straight honesty and integrity. Please tell the 'Clark Family' that I am very [s]orry for being responsible for the death of their loved one. I am sincerely sorry to them. I do feel 'Remorse' for what happened."

c. *The People's opposition*

The People filed an opposition in which they noted that the jury had found true "allegations that [Baumgartner] personally and intentionally discharged a firearm causing death [ . . . section 12022.53[, subd.] (d)], personally and intentionally discharged a firearm [ . . . section 12022.53[, subd.] (c)], and personally used a firearm [ . . . section 12022.53 [, subd.] (b)]."

8

The People argued that "the court should not strike the gun enhancements in this case in which [Baumgartner] shot the victim point-blank in the face, execution-style, killing [him]." (Capitalization and boldface omitted.)

The People noted that in deciding whether to exercise its discretion to strike the firearm enhancements, the trial court should consider the "aggravating factors in the offense, [Baumgartner's] criminal history, and mitigating factors, if any." According to the People, in this case, "the aggravating factors clearly outweigh any mitigating factors." The People summarized those factors as follows:

> "**Factors in Aggravation**
>
> "(1) [Baumgartner] here engaged in violent conduct that indicates a serious danger to society. In the instant case, [Baumgartner] resorted to extreme violence when he fired one shot, at close range, into the face of the victim, essentially blowing away the victim's nose and killing the victim almost instantly. At the trial, [Baumgartner] testified that he meant to shoot the victim, and that it was not an accident. [Baumgartner] testified he knew a gun could kill people, and that firing a gun in someone's face will likely kill or hurt him. [Baumgartner] could have fired the shot at other parts of victim's body, such as his arms or legs. Yet he chose to point the gun at the victim, said 'Who's the bitch now? Who's the badass now?' and then shot the victim in the face from a short distance. The killing here was clearly done execution-style.
>
> "(2) [Baumgartner] has not shown remorse. Rather, he put the blame on the victim. At the trial, he fabricated a story about what happened. He testified that the victim was holding a rock and was about to strike him. Nothing could be further from the truth. Neither of the two witnesses who was at the scene saw the victim with a rock. Neither saw the victim raising his arm as if he was going to strike [Baumgartner]. Indeed, [Baumgartner's] only remorse

9

stems from the prospect of having to spend the rest of his life in prison.

"(3) The crime itself also involved great bodily harm—in this case, it was great bodily harm to the extreme: death. [Baumgartner] engaged in violent conduct when he fired one single shot at the victim's face at close range, killing the victim. [¶] Indeed, based on the above aggravating factors, [Baumgartner] is not the proper subject for an exercise of judicial discretion to strike the firearms enhancement in the present offense."

"**Factors in Mitigation**

"According to the probation officer's report, dated October 6, 2016, the probation officer did not find any circumstances in mitigation in this case, relating to the facts and [Baumgartner]."

The People concluded by requesting "the court to deny [Baumgartner's] motion to strike the gun-enhancement true findings rendered by the jury."

    d. *The resentencing hearing*

At the resentencing hearing, defense counsel requested that the trial court "exercise its discretion in favor of striking the arming enhancement under . . . section 12022.53." In support of this request, defense counsel argued in part:

"As the Court is aware, Mr. Baumgartner had little or no prior criminal record. He has a supportive family. Up until this incident occurring, he was employed, he had a home, he had a family. He was not a run-of-the-mill criminal that was out on the street committing crimes and that this resulted from such a crime. Rather, it resulted from an argument that got out of hand due to a dispute between neighbors. That's essentially the entire case in a nutshell. There was no planning. There was no deliberation. Again it was stemmed by [*sic*] an argument.

10

"We are where we are for purposes of a second degree murder conviction that resulted from this dispute and the shooting by Mr. Baumgartner, but not only the facts of his background, his lack of background, lack of criminal history, employment, loving family, all of those factors would weigh in favor of the Court exercising its discretion in favor of striking the arming enhancement.

"The facts of the offense is this was not a planned, premeditated killing, but it was a sporadic shooting that occurred as a result of an argument and a fight and a dispute and an escalation of events between the decedent and Mr. Baumgartner.

"So both the facts of the offense and Mr. Baumgartner's character and background, past lack of offenses, under the Rules of Court all militate in favor of the Court striking the arming enhancement.

"In addition, if you look at the sentence, Mr. Baumgartner now is well over 50 years old. If the Court imposes the sentence of 40 years to life, there's no conceivable way that Mr. Baumgartner could possibly complete it. That sentence essentially results in a sentence of life without the possibility of parole.

"Mr. Baumgartner is nearing his mid 50s, nearing 60 years old at this point in his life. He would be at least 70 years old before he would even be considered for purposes of parole by the Parole Board, and based on that, I believe the 15-year-to-life sentence would reflect the gravity of the crime and Mr. Baumgartner's history.

"Based upon those facts, I would ask that the Court exercise its discretion in favor of striking the arming enhancement and re-sentence Mr. Baumgartner to 15 years to life."

The prosecutor requested that the court "deny [Baumgartner's] request," arguing:

11

"People ask the Court to deny [Baumgartner's] request. We submitted our brief. We laid out the factors in aggravation. They clearly outweigh any factors in mitigation. The defense argues that this was not planned, premeditated. Well, the jury did not find him guilty of first degree murder so, therefore, that's not an issue in this case.

"The Court heard the evidence in this case. This defendant, you know, killed the victim execution style, fired a gun right into the victim's face, and [Baumgartner] was cocky. [Baumgartner] . . . showed no remorse in this case. The only remorse is he will spend the rest of his 40 years in prison, possibly the rest of his life. That's not a consideration for the Court to consider. I would ask the Court to not grant the relief."

At the conclusion of the hearing, the trial court declined to exercise its discretion to strike the firearm enhancements, and resentenced Baumgartner as follows:

"All right. Counsel, the Court has, Mr. [defense counsel], reviewed your notice of motion and motion to strike the arming enhancement and memorandum of points and authorities along with the supporting documentation in support of Mr. Baumgartner.

"Mr. [prosecutor], the Court has also reviewed your opposition. The Court has considered the arguments and case law presented before this court. At this time, after considering [*sic*], the Court will not exercise its discretion to strike. The sentence previously imposed will remain as set. The Court notes that, in this case, it's clear that Mr. Baumgartner targeted the victim, the shot was fired directly into the victim's face. The gunshot was at very close range. Mr. Baumgartner did not call 911 until after he had returned into his residence and deposited the weapon and, at that point, called for aid. Note also that Mr. Baumgartner showed little remorse in this case, if any.

12

"At this time, the Court affirm [*sic*] the prior sentencing in this case. The Court will not exercise discretion."

2. *Governing law*

Senate Bill No. 620 (2017–2018 Reg. Sess.), effective January 1, 2018 (Senate Bill No. 620), amended section 12022.53, subdivision (h), to give trial courts discretion to strike firearm enhancements in the interest of justice. (§ 12022.53, subd. (h), as amended by Stats. 2017, ch. 682, § 2.)

As amended by Senate Bill No. 620, section 12022.53, subdivision (h), provides:

> "The court may, in the interest of justice pursuant to Section 1385[4] and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

---

4    Section 1385 provides:

> "(a) The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record. The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter. A dismissal shall not be made for any cause that would be ground of demurrer to the accusatory pleading.
>
> "(b)(1) If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a).
>
> "(2) This subdivision does not authorize the court to strike the additional punishment for any enhancement that cannot be stricken or dismissed pursuant to subdivision (a)."

13

In determining whether to strike a firearm enhancement, a trial court is required to consider the factors bearing on its section 1385 discretion, including "the rights of the defendant, the interests of society represented by the People, and individualized considerations pertaining to the defendant and his or her offenses and background." (*People v. Rocha* (2019) 32 Cal.App.5th 352, 359 ["The amendments to section 12022.53, [subdivision] (h) also rest upon section 1385, the same animating authority underlying [*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497]. Thus the court is required to weigh similar considerations when exercising its discretion . . ."].)

In deciding whether to strike a firearm enhancement, a trial court shall also consider the factors listed in California Rules of Court, rules 4.410, 4.421 and 4.423. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117.) Rule 4.410 lists the general objectives of sentencing, which include protecting society, punishing the defendant, encouraging the defendant to lead a law-abiding life in the future, and deterring him or her from future offenses. Rules 4.421 and 4.423 set forth the circumstances in aggravation and mitigation that relate to the crime and the defendant.

3. *Standard of review*

A trial court's discretionary decision regarding whether to strike a sentencing enhancement is reviewable "under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary." ' " (*Id.* at p. 376.) "[A] ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Id.* at p. 377.)

14

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  Thus, an abuse of discretion may be shown where the court was not aware of the scope of its discretion pursuant to section 1385.  (*People v. Lee* (2008) 161 Cal.App.4th 124, 132.)  However, it is a bedrock principle of appellate law that we presume that a judgment of the trial court is correct and " ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666.)  Specifically, "In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' " (*People v. Thomas* (2011) 52 Cal.4th 336, 361 (*Thomas*).)  In addition, we also must presume that the court considered all relevant sentencing "factors unless the record affirmatively shows the contrary."  (*People v. Kelley* (1997) 52 Cal.App.4th 568, 582 (*Kelley*); see Cal. Rules of Court, rule 4.409 ["Relevant factors enumerated in these rules . . . will be deemed to have been considered unless the record affirmatively reflects otherwise"].)

4. *Baumgartner has not established that the trial court failed to consider whether to impose and execute a firearm enhancement with a term of less than 25 years*

Baumgartner contends that "the record does not reflect that the trial court made a decision based on 'informed discretion,' i.e., that it understood its discretion under section 12022.53, subdivision (h), as amended by Senate Bill 620, did not require an all or nothing decision, but instead allowed it to still impose a lesser enhancement of either 10 years under subdivision (b) or 20 years under subdivision (c) if it struck the 25 year to life firearm enhancement under subdivision (d)."  In support of this contention, Baumgartner notes that "the arguments of both parties' counsel were focused

solely on the subdivision (d) enhancement," and argues that the trial court "made no indication it had determined whether one of those lower terms may be more appropriate to impose to achieve an overall sentence in this case that would have been more aligned with the interests of justice."

We are not persuaded. To begin with, our disposition in the prior appeal specifically instructed the trial court to consider whether "to strike *one or more* of the section 12022.53 firearm *enhancements* under section 1385 or again impose the enhancement *terms*." (*People v. Baumgartner, supra*, D075102, italics added.)

Further, Baumgartner and the People both stated in their briefing on remand that the jury had found true *multiple* firearm allegations (§ 12022.53, subds. (b), (c), and (d)). In, addition, in their briefing, Baumgartner and the People both discussed the striking of the firearm *enhancements*. Specifically, the People argued that the "the court should not strike the gun *enhancements* in this case," and the People also "request[ed] [that] the court . . . deny [Baumgartner's] motion to strike the gun-enhancement true *findings* rendered by the jury." (Italics added.) Baumgartner's brief noted that this court had remanded the matter to permit the trial court to "determine whether to strike or dismiss the firearm *enhancements*," and the conclusion of Baumgartner's brief stated, "[T]he court should exercise its discretion and strike the arming *enhancements* pursuant to amended section 12022.53, subdivision (h)." (Italics added)

At the resentencing hearing, the court expressly stated that it had reviewed Baumgartner's motion and the People's opposition. Thus, the trial court was made aware both that the jury had found true *three* firearm enhancement allegations, and that the court was to exercise its discretion in determining whether to strike any or all of the enhancements.

16

While the People, Baumgartner, and the trial court, did, on occasion, refer to striking the "enhancement," these references do not demonstrate that the court did not consider striking the section 12022.53, subdivision (d) enhancement, and imposing and executing a 12022.53 enhancement that carried a lesser term (i.e., either the § 12022.53, subd. (b) or subd. (c) enhancement). If the court had struck the section 12022.53, subdivision (d) enhancement, the other enhancements would have remained to be imposed and executed, unless stricken or stayed. (See *People v. Tirado* (2019) 38 Cal.App.5th 637, 644, review granted Nov. 13, 2019, S257658 (*Tirado*) [stating that where jury finds enhancement allegations true under section 12022.53, subdivisions (b), (c), and (d), "the court . . . [has] the discretion to strike the section 12022.53, subdivision (d) enhancement and then either impose one of the other two enhancements or strike them as well"]; *People v. Morrison* (2019) 34 Cal.App.5th 217, 222 (*Morrison*) ["In a case where the jury [has] returned true findings of the lesser enhancements under section 12022.53, subdivisions (b) and (c), the striking of an enhancement under section 12022.53, subdivision (d) would leave intact the remaining findings, and an enhancement under the greatest of those provisions would be mandatory unless those findings were also stricken in the interests of justice"].) Thus, even assuming that the parties focused primarily on the 12022.53, subdivision (d) enhancement, the People are correct in arguing that "the trial court's decision – to not strike the subdivision (d) enhancement – was not inconsistent with it holding the belief that it had discretion to impose a lesser enhancement."

We are similarly unpersuaded by Baumgartner's argument that he is entitled to reversal and a remand because the trial court "made no indication it had determined whether one of those lower *terms* may be more

17

appropriate." (Italics added.) As discussed above, the law is clear that "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' " (*Thomas, supra*, 52 Cal.4th at p. 361.) Baumgartner points to no evidence in the record that suggests that the trial court misunderstood the law,[5] and there is no requirement that the court provide an "indication" of its consideration of a potential sentence. Rather, the law is the opposite, as the Court of Appeal in *People v. Brown* (2007) 147 Cal.App.4th 1213, emphasized:

> "[R]emand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record. [Citation.] ' "[A] trial court is presumed to have been aware of and followed the applicable law. [Citations.]" ' " (*Id.* at p. 1229.)

*Morrison, supra*, 34 Cal.App.5th 217, on which Baumgartner relies, does not support reversal and remand. On the contrary, *Morrison* supports affirmance. In *Morrison*, the defendant contended that the trial court "had the discretion to *modify* the enhancement from that established by section

---

[5] For the reasons explained in the previous paragraphs, references in the record to striking an "enhancement," are not evidence that the trial court misunderstood the law. Thus, *People v. Lua* (2017) 10 Cal.App.5th 1004, on which Baumgartner relies, is distinguishable. In *Lua*, the Court of Appeal stated that "parts of the record tend to suggest that the trial court did not understand it had the authority to impose a sentence of less than 17 years, by striking one or more of the five section 11370.2 enhancements." (*Id.* at p. 1021.) Specifically, the *Lua* court noted that the trial court, "characterized the 17-year sentence as 'the lowest sentence possible,' and the 'minimum,' " which the *Lua* court stated could reasonably by understood to "indicate that the trial court believed it had no means to impose any sentence lower than 17 years." (*Ibid.*) In this case, in contrast, there is nothing in the record indicating that the trial court misunderstood the scope of its discretion in resentencing Baumgartner.

12022.53, subdivision (d), which carries a term of 25 years to life, to a 'lesser included' enhancement under section 12022.53, subdivision (b) or (c), which carry lesser terms of 10 years or 20 years, respectively," (*Morrison, supra*, at p. 221, italics added) notwithstanding that, unlike in this case, the section 12022.53, subdivision (b) and (c) enhancements in *Morrison* were *uncharged*. (*Morrison, supra*, at p. 222.)  After considering this novel issue,[6] the *Morrison* court concluded that the trial court did in fact have such discretion (*Morrison, supra*, at p. 222) and rejected the People's argument that a remand was unnecessary because "it [was] clear from the [trial] court's comments it would not exercise its discretion even if it had the power to do so." (*Morrison, supra*, at p. 223.)

Unlike in *Morrison*, in this case, section 12022.53, subdivision (b) and (c) enhancement allegations were *charged* and found true by the jury.  As our disposition in the prior appeal made clear, the trial court was directed to decide on remand whether "to strike *one or more* of the section 12022.53 firearm *enhancements* under section 1385 or again impose the enhancement *terms*."  (*People v. Baumgartner, supra*, D075102, italics added.)  Thus, while in *Morrison*, the Court of Appeal agreed with appellant that the "court did

6     Numerous courts have disagreed with the *Morrison* court's conclusion that a trial court may impose a sentence based on an *uncharged* firearm enhancement.  (See, e.g., *Tirado, supra*, 38 Cal.App.5th at p. 644, review granted ["We are aware our opinion reaches a holding contrary to that of [*Morrison, supra*, 34 Cal.App.5th 217].  We do not find the reasoning in *Morrison* persuasive and respectfully disagree with it"]; *People v. Yanez* (2020) 44 Cal.App.5th 452, 458; review granted Apr. 22, 2020, S260819; *People v. Garcia* (2020) 46 Cal.App.5th 786, 788, review granted Jun. 10, 2020, S261772.)  The issue is pending before the California Supreme Court.  (See *Tirado, supra*, 38 Cal.App.5th 637, review granted Nov. 13, 2019, S257658.)  We need not, and do not, express any opinion on this issue, because it is not relevant to the disposition of this appeal.

not understand the scope of its discretion" (*Morrison, supra*, 34 Cal.App.5th at p. 221), in our prior opinion in this case we expressly instructed the trial court that it was to consider whether to strike "*one or more* of the section 12022.53 firearm enhancements. . . ." (*People v. Baumgartner, supra*, D075102, italics added.) Indeed, the *Morrison* court itself observed that, "[t]he question of whether the court may elect to impose uncharged lesser firearm enhancements as part of its discretion under Senate Bill No. 620 (2017–2018 Reg. Sess.) and the amended version of section 12022.53, subdivision (h) only arises in cases where those enhancements have *not* been charged in the alternative and found true." (*Morrison, supra*, at pp. 224–225, italics added.) That is because, in cases such as the present case, in which the lesser enhancements (§ 12022.5, subds. (b), (c)) have been charged and found true, it is clear that the law provides a trial court with the authority to strike any or all such enhancements. (See § 12022.53, subd. (h); *Tirado, supra*, 38 Cal.App.5th at p. 644, review granted, *Morrison, supra*, at p. 222.)

Moreover, even in cases involving *uncharged* enhancements, the *Morrison* court noted that, where the sentencing occurred after the publication of that decision, a remand would not be necessary if the record is silent as to whether the trial court considered imposing and executing a lesser firearm enhancement, given the presumption that a trial court correctly applied the law. (*Morrison, supra*, 34 Cal.App.5th at p. 225 ["[A]fter the publication of our decision today, the usual presumption that a sentencing court correctly applied the law will apply and will ordinarily prevent remand where the record is silent as to the scope of a court's discretion"].) The resentencing in this case took place in July 2020, long after the April 2019 publication of *Morrison*. Thus, it is abundantly clear that Baumgartner is not entitled to reversal and a remand pursuant to *Morrison*.

20

Accordingly, we conclude that Baumgartner is not entitled to reversal and a remand on the ground that the trial court failed to consider whether to impose and execute a firearm enhancement carrying a term of less than 25 years.

5. *Baumgartner is not entitled to reversal on the ground that, in declining to strike the enhancements, the trial court failed to provide individualized consideration of mitigating factors and relied on improper aggravating factors*

Baumgartner claims that the trial court abused its discretion in determining whether to strike one or more of the enhancement terms by failing to adequately consider mitigating factors relevant to its exercise of discretion, and by relying on the circumstances of the offense and its perception that Baumgartner lacked remorse.

With respect to Baumgartner's contention that the trial court "made no statement of having given individualized consideration to Baumgartner's background and/or any factors in mitigation," no statement was required and there is nothing in the record indicating that the court failed to consider such factors, insofar as they may have existed. (See Cal. Rules of Court, rule 4.409 ["Relevant factors enumerated in these rules . . . will be deemed to have been considered unless the record affirmatively reflects otherwise"].) On the contrary, the trial court expressly stated that it had reviewed Baumgartner's brief and his counsel's argument at the resentencing hearing, both of which articulated numerous mitigating factors that Baumgartner references on appeal. Under these circumstances, we must presume that the court considered all relevant sentencing factors. (See e.g., *Kelley, supra,* 52 Cal.App.4th at p. 582.) Further, even if we were to consider such mitigating factors sufficiently compelling to strike one or more of the firearm enhancements at issue in this case, as an appellate court, we are " ' " 'neither

21

authorized nor warranted in substituting [our] judgment for the judgment of the trial judge.' " ' " (*Carmony, supra*, 33 Cal.4th at p. 377.)

With respect to the trial court's reliance on certain circumstances of the offense in declining to strike the firearm enhancements or to impose a lesser one, it was entirely appropriate for the court to consider such factors. Indeed, in his brief on appeal, Baumgartner acknowledges as much in stating both that " 'nature and circumstances of the defendant's present felonies,' " are a factor to be considered in applying section 1385 and that the legislative history of Senate Bill No. 620 supports the conclusion that a trial court may " 'take into account the nature and severity of the crime,' " in applying section 12022.53, subdivision (h). We see nothing improper in the trial court's reliance on certain facts of the shooting in its support of its determination not to strike any of the firearm enhancements.

In support of Baumgartner's suggestion that the trial court improperly relied on its assessment that he had shown little remorse, Baumgartner speculates that "[s]ince [he] was not present for the resentencing hearing, the trial court's statement that he showed little remorse appears to have been based upon the probation officer's subjective conclusion after interviewing Baumgartner prior to his initial sentencing." While Baumgartner was not present at the resentencing hearing, he lodged a letter in support of his motion to strike the enhancements. In that letter, while professing remorse, Baumgartner also referred to the victim as a " '[b]ully.' " In addition, Baumgartner stated that he had committed the shooting out of " '[f]ear.' " Further, while Baumgartner claimed in his resentencing letter that the shooting was accidental, that account was directly contradicted by statements that Baumgartner made to the police, which were offered in

22

evidence at trial.  Under these circumstances, the trial court did not abuse its discretion in stating that Baumgartner had "show[n] little remorse."

Accordingly, we conclude that, in declining to strike the firearm enhancements, the trial court did not fail to provide individualized consideration of mitigating factors or rely on improper aggravating factors.[7]

IV.

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

---

[7]    Baumgartner also contends that *"to the extent the sentencing issue is deemed forfeited*, Baumgartner received ineffective assistance of counsel in that regard and requests relief on that basis." (Capitalization omitted, italics added.)  Baumgartner also states, *"To the extent the lack of informing the court of its discretion and advocating for one of the lesser term enhancements rather than the one that caused a life sentence is considered to forfeit* Baumgartner's request now for remand for further sentencing consideration, he contends his counsel was ineffective in this regard." (Italics added.)  We do not deem any of Baumgartner's claims on appeal forfeited, and thus, we have no occasion to consider the ineffective assistance of counsel claim that he offers in the alternative.

23